RAYMOND DEAN LINDSEY, d/b/a Lindsey Auto Sales, *et al.*, Plaintiff-Appellant, v. JIM EDGAR, Secretary of State, Defendant-Appellee.

Fourth District   No. 4—84—0341

Opinion filed December 28, 1984.

John J. Casey, of Casey & Casey, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Mark A. LaRose, Assistant Attorney General, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Pursuant to section 5—501(a) of the Illinois Vehicle Code, (Ill. Rev. Stat. 1981, ch. 95½, par. 5—501(a)), the Secretary of State revoked

the dealer's licenses issued to the plaintiff, Raymond Dean Lindsey. Lindsey filed for administrative review, but the circuit court of Sangamon County affirmed the Secretary's decision. Lindsey appeals, contending his conduct was not sufficient to justify revocation of his licenses.

Prior to 1984, section 3—118.1 of the Code provided, in part:

"Whenever a certificate of title is issued for a vehicle with respect to which a salvage certificate has been previously issued, the new certificate of title shall bear the initials 'S.V.'." (Ill. Rev. Stat. 1981, ch. 95½, par. 3—118.1.)

In 1981, Lindsey participated in a scheme designed to "launder" Illinois titles bearing the initials S.V.

The facts are not in dispute. Lindsey repaired and sold used cars through Lindsey Auto Sales and Dean's Hatch & Sunroofs. He purchased six vehicles that had salvage certificates and rebuilt them. He also applied for and received Illinois titles marked S.V. for each car. Lindsey assigned these titles to Missouri car dealers. In five of six cases, the Missouri dealer submitted the Illinois S.V. title to the State of Missouri and obtained a "clean" Missouri title, one not indicating the car had been salvaged. In the other instance, the Missouri dealer reassigned the title to a Kentucky dealer, who obtained a "clean" Kentucky title. The six cars, however, never left Lindsey's possession. The Missouri and Kentucky dealers assigned their out-of-State titles back to Lindsey. Lindsey then resold the automobiles, giving the purchasers "clean" out-of-State titles. Lindsey sold five of the cars to other Illinois used car dealers. He sold the sixth car to his cousin. According to Lindsey, all the purchasers knew the vehicles had been damaged and repaired. In four instances, the purchaser or a subsequent assignee submitted the out-of-State title to the Secretary of State and received an Illinois title without the initials S.V. on it.

In 1982, Lindsey was indicted on six counts of mail fraud for his participation in "laundering" the titles. In a statement to a postal inspector, Lindsey estimated that removing the S.V. notation increased the value of a car $400 to $500. Lindsey also stated he gave the Missouri dealers about $50 per title to obtain the out-of-State titles. Finally, he conceded the deals were only paper transactions designed to circumvent Illinois law. A jury convicted him of the Federal charges, and the Appellate Court for the Seventh Circuit upheld his conviction in *United States v. Lindsey* (7th Cir. 1984), 736 F.2d 433.

On March 31, 1983, the Secretary of State held a hearing to determine whether Lindsey's licenses should be revoked under section 5—501(a). The relevant portions of that statute are as follows:

"The license of a person issued under this Chapter may be denied, revoked or suspended if the Secretary of State finds that the licensee, *** has:

1. Violated this Act;

2. Made any material misrepresentation to the Secretary of State in connection with an application for a license, junking certificate, salvage certificate, title or registration;

3. Been guilty of a fraudulent act in connection with selling, bartering, exchanging, offering for sale or otherwise dealing in vehicles, bodies and component parts;

\* \* \*

12. Violated the provisions of Chapter 4 of this Act, as amended;

13. Violated the provisions of Chapter 3 of this Act, as amended." (Ill. Rev. Stat. 1981, ch. 95½, par. 5—501(a).)

Lindsey maintains his conduct did not fall within any of the above proscriptions of section 5—501(a). The Secretary of State decided Lindsey's conduct was sufficient to justify revocation of his licenses. On review, the trial court agreed.

As Lindsey notes, we are not bound by the Secretary of State's decision. When the facts are not in dispute, their legal effect becomes a matter of law, and upon questions of law, the decision of an administrative agency does not bind the reviewing court. (*Kensington Steel Corp. v. Industrial Com.* (1944), 385 Ill. 504, 509, 53 N.E.2d 395, 397.) On the other hand, the Secretary's interpretation of section 5—501(a) is not totally irrelevant. "The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature." (*People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 73, 285 N.E.2d 129, 130.) Statutory interpretations by administrative agencies express an informed source for ascertaining the legislative intent. *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 344-45, 348 N.E.2d 161, 165.

Generally, the interpretation of a statute must be grounded on the nature and object of the statute as well as the consequences which would result from construing it one way or another. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 1335.) The predominant purpose in licensing a trade or profession is to prevent injury to the public by assuring that the occupation will be practiced with honesty and integrity and by excluding those who are incompetent or unworthy. *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 551, 370 N.E.2d 1198, 1203.

With this purpose in mind, we turn to the Secretary's findings in

this case. The Secretary decided Lindsey had violated section 3—118.1. His licenses, therefore, could be revoked under either section 5—501(a)(1) or (13). The Secretary first looked to the legislative background of section 3—118.1. Under the original bill, the word "rebuilt" was to appear on titles rather than the initials S.V. One purpose of the bill was to track titles of salvaged cars, which had been a major problem in "laundering" of titles to stolen cars. The bill also provided consumer protection by informing the purchasing public when a car had been rebuilt. To appease the rebuilder's association, however, the Senate deleted the word "rebuilt" and substituted S.V. S.V. simply stands for salvage vehicle. At first, the House refused to concur with the Senate amendment. The House felt the bill's consumer protection quality would be substantially weakened. After a joint committee voted to adopt the Senate amendment, the House accepted it. The House sponsor and other members, however, contemplated a campaign by the Secretary of State to inform the general public as to what the initials S.V. meant. Lindsey's statement that an automobile's value increased when its title had no S.V. designation makes it clear that the Secretary's program was somewhat successful. The legislature recently amended section 3—118.1 to reinsert the word "REBUILT" for the initials S.V. Ill. Rev. Stat. 1983, ch. 95½, par. 3—118.1

■■ ■ From this background, the Secretary concluded the purpose behind the statute was consumer protection as well as crime prevention. Viewing Lindsey's scheme as an intent to increase the value of his vehicles by concealing from potential consumers the fact that the vehicle had been rebuilt, the Secretary held Lindsey had violated section 3—118.1. Lindsey maintains he legally exchanged titles in his out-of-State transactions. He acknowledges that his entire plan was an attempt to evade the statutory S.V. requirement, but he contends his licenses cannot be revoked for merely violating the spirit of the statute. We disagree. Even if the letter of the law does not apply, a situation within the object, spirit, and meaning of the statute falls within it. (*Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 575, 369 N.E.2d 1279, 1282.) Lindsey's scheme simply cannot be condoned.

The Secretary also held Lindsey was guilty of a fraudulent act in connection with dealing in vehicles. Thus, his license could be revoked under section 5—501(a)(3). Proof of his guilt is supplied by his conviction for mail fraud and by his own admission. Lindsey notes that for fraud to be actionable, there must be some injury. (*Cole v. Ignatius* (1983), 114 Ill. App. 3d 66, 448 N.E.2d 538.) The Secretary expressly

found that no one had suffered any damage as a result of Lindsey's scheme. Lindsey concludes he committed no fraudulent act because no one was defrauded.

■ The tort action for fraud remedies an individual's injury. Hence, the individual must suffer some damage before he can receive compensation. Section 5—501(a), on the other hand, was designed to protect the public as a whole from unscrupulous car dealers. Lindsey's conduct, along with his intent to deceive both the Secretary of State and future consumers, makes him unworthy to hold his licenses. Merely because the proper authorities uncovered Lindsey's plan before anyone was actually injured makes Lindsey no less unworthy.

■■ The Secretary further found Lindsey had made a material misrepresentation in connection with an application for title in violation of section 5—501(a)(2). Lindsey contends he made no false statement on any title application. A misrepresentation, however, may consist of the concealment of the truth as well as the assertion of what is false. When the failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and an affirmative misrepresentation is tenuous. (*State v. Coddington* (Ariz. App. 1983), 135 Ariz. 480, 481, 662 P.2d 155, 156.) Even if a statement is technically true, it may nonetheless be a misrepresentation where it omits qualifying material, because a half-truth may be more misleading than an outright lie. *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 195, 380 N.E.2d 1040, 1044.

■ Section 4—105(a)(5) of the Code prohibits a person from making a material false statement or concealing a material fact on title applications. (Ill. Rev. Stat. 1981, ch. 95½, par. 4—105(a)(5).) The Secretary held Lindsey's licenses could be revoked under section 5—501(a)(12) for his violation of section 4—105(a)(5). Lindsey complains because he did not apply for any of the "clean" Illinois titles. He concludes he did not conceal any material fact on an application. He, however, had to sign his cousin's application because he was the dealer in the transaction. His signature amounts to an assertion that the material facts behind the transaction had been revealed on the application. Section 3—118.1 makes the previous S.V. title material.

■■ Finally, Lindsey argues neither section 5—501(a)(2) nor 4—105(a)(5) apply because the application did not specifically request the disclosure of previous S.V. titles. For a concealment to amount to a misrepresentation, it must have been done with an intent to deceive under circumstances creating an opportunity and a duty to speak. (*Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 79, 302 N.E.2d 201, 205.) Lindsey concedes he acted with an intent to deceive. Moreover, his li-

censes created a duty to speak. Apparently, he argues he had no opportunity to reveal the previous salvage certificates. In light of the fact that his entire scheme was designed to avoid revealing this information, Lindsey's argument seems particularly paltry. One cannot purposely act to suppress information and then claim he had no opportunity to disclose it.

The order of the Secretary of State revoking plaintiff's licenses is affirmed.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.