RANDALL L. STEWART *et al.*, Plaintiffs-Appellants, v. JEFFREY L. THRASHER *et al.*, Defendants-Appellees.

Fourth District   No. 4—92—0524

Opinion filed March 25, 1993.

Ray Moss, of Ray Moss & Associates, P.C., of Clinton, for appellants.

No brief filed for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Randall and Bonnie Stewart filed an action seeking damages or contract rescission due to negligent misrepresentation, mutual mistake of fact, breach of warranty of habitability, and violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*). After a bench trial on the merits, the circuit court entered judgment in favor of the defendants, Jeffrey and Liana Thrasher, on all counts. On appeal, the plaintiffs have abandoned the breach of warranty of habitability and consumer fraud theories, but contend the circuit court's determination there was no negligent misrepresentation, or in the alternative, mutual mistake of fact, was against the manifest weight of the evidence. The defendants have not filed an appellee's brief; however, the record is simple and the issues are clear, so we will address the merits. *First Capitol Mortgage*

*Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.

The circuit court's commendably thorough memorandum decision and order has helped us in the review of this case. In this nine-page, single-spaced order, the circuit court details its perception of the issues and its understanding of applicable law, applying that law to extensive findings of facts and setting forth the rationale for its conclusions. We affirm.

The house at issue had previously been owned by Jeffrey's mother and was bought at an auction by the Thrashers in 1990 for $7,000. The Thrashers, and Jeffrey's brother Leonard, made repairs to the interior of the home. The rooms were dry-walled and painted, and baseboards, carpeting, the sill plate, and part of the foundation were replaced. There was conflicting testimony regarding whether Jeffrey had been in the crawl space making repairs; the circuit court found that the evidence established that he had. The Thrashers placed an ad in the newspaper, offering the home for sale at a price of $20,000. The Stewarts responded to the ad, viewed the home on two occasions, and then made an offer. The Thrashers and the Stewarts agreed upon a price of $17,000. There was no written contract of sale, and the parties testified, and plaintiffs concede in their brief, the parties did not discuss termite infestation.

The Stewarts' lender required the property to be inspected for termite infestation. Jeffrey's mother had previously had the property inspected for termite infestation by Robert Monkman in 1988. In January 1991, the Thrashers hired Monkman to reinspect the property in order to satisfy the requirements of the Stewarts' lender.

Monkman testified he is disabled and is occasionally self-employed as a real estate broker and pest inspector. Monkman was not licensed or trained in discovering pest infestation. Monkman inspected the crawl space, interior of the home, and the attic. The report completed by Monkman consisted of a form, providing boxes, next to explanations, which were to be checked if appropriate. The form provided boxes next to the following explanations:

"A. Visible evidence of wood destroying insects was observed. No control measures were performed. Insects observed: _____; B. No visible evidence of infestation from wood destroying insects was observed; C. Visible evidence of infestation was noted; proper control measures were performed; D. Visible damage due to _____ has been observed in the following areas _____; E. Visible evidence of previously treated infestation, which is now inactive, was observed."

Monkman checked only box "B." Monkman noticed damage caused by termites or other wood-damaging insects, as well as wood rot. He did not consider the damage to be serious, so he did not note it in his report. Monkman testified he did not check box "D," indicating visible damage, because he only uses box "D" in the case of Federal Housing Authority (FHA) or Veterans Administration (VA) loans. If the buyer is not getting a FHA or VA loan, Monkman does not report visible damage, even if he notices it during the course of his inspection. Monkman additionally testified he noticed possible carpenter ant damage, but did not note it on his report because it was not required. Prior to the closing, the Stewarts went to the property to walk around the outside of the structures. They noticed damage to some of the siding. The following day, they called their lender to determine whether the termite inspection report had been received. The lender indicated it had, and it indicated there was no infestation reported. On February 16, 1991, the parties closed on the property. All of the documents, including the termite report, were read to the parties, and the Stewarts signed a real estate settlement statement stating they would accept the property in an "as is" condition.

In April, the Stewarts discovered what they believed to be termite damage in the crawl space. They contacted Orkin and Terminex. Dennis Warf, a Terminex inspector, inspected the property on May 6, 1991. Warf testified he had taken a three-month pest-control training program and was licensed by the Department of Public Health. He testified in detail as to the methods he employed in inspecting the home. Warf stated he found some active infestation, and extensive structural damage due to prior infestation. He additionally testified termites are not as active in cold weather as they are in warm weather; therefore, they would have been more difficult to discover when Monkman inspected the home in January. However, Warf testified that in his professional opinion based upon the visible damage to the home, a pest inspector should expect active termite infestation when the weather becomes warmer. Warf testified he would not have checked box "B" on the form utilized by Monkman. Rather, Warf testified he would have checked box "D" on the form, and recommend the building be examined by a qualified building expert. Warf testified it is a standard in the trade of pest inspection that an inspector would record termite damage in the report.

The trial court found the Stewarts and the Thrashers had entered into an oral contract for the purchase of the property for a price of $17,000, but did not agree upon any other contractual terms or conditions. At the closing, the Stewarts signed a settlement statement

which set forth the home was being accepted in an "as is" condition. The circuit court found there had been no misrepresentation because there had been no evidence to establish the Thrashers were aware of the termite damage. The circuit court found there had been no mutual mistake of fact because the parties had not agreed an element of the contract was that the property would be free from termite infestation and damage.

■ Plaintiffs' first contention, is the trial court erred in determining there had been no misrepresentation. On appeal and in plaintiffs' complaint, the misrepresentation is titled as "negligent misrepresentation." However, the misrepresentation alleged by plaintiffs bears closer resemblance to fraudulent misrepresentation and was treated as such by the trial court. Negligent misrepresentation involves a breach of the duty to use due care in obtaining and communicating information upon which others may reasonably be expected to rely in the conduct of their economic affairs. (*Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 420, 484 N.E.2d 473, 479.) A negligent misrepresentation is a representation the maker believes to be true, but is, in fact, false. (*Lehmann*, 137 Ill. App. 3d at 421, 484 N.E.2d at 479.) Fraudulent misrepresentation involves the making of a representation which the maker knows to be false, or is made with reckless disregard for its truth or falsity. (*Gerill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179, 193, 538 N.E.2d 530, 536.) The major difference between the two involves the state of mind of the maker of the statement.

■ Plaintiffs here could not as a matter of law succeed under a negligent misrepresentation theory against the Thrashers, because the Thrashers are not in the business of providing information, nor were they under a public duty to do so. The Stewarts' evidence of damages was limited to economic losses incurred due to the termite infestation. The landmark case of *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, and its progeny, severely limited the availability of recovery for purely economic loss, under a tort theory, in contract actions. In the subsequent case of *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 178, 441 N.E.2d 324, 327, the court found that while the commercial expectations of the plaintiff in a contract action had not been met by the defendant, requiring plaintiff to incur additional expenses for conditions that were less than what was bargained for, such economic losses could not be recovered under a negligence theory. The *Moorman* court did, however, leave open the possibility a plaintiff in a contract action could recover economic losses resulting from negligent misrepresentation, where the

person making the representation is in the business of providing information. (*Moorman*, 91 Ill. 2d at 88-89, 435 N.E.2d at 452; see also *Lehmann*, 137 Ill. App. 3d at 420, 484 N.E.2d at 479.) In *Lehmann*, we additionally determined a plaintiff in a contract action could recover economic losses resulting from the negligent misrepresentation of one under a public duty to provide information. (*Lehmann*, 137 Ill. App. 3d at 421, 484 N.E.2d at 479.) The *Lehmann* case concerned information filed pursuant to statute with the county recorder, which became a matter of public record.

We have determined the provider of a termite inspection report can be liable for economic damages stemming from negligent misrepresentation. (*Perschall v. Raney* (1985), 137 Ill. App. 3d 978, 984-85, 484 N.E.2d 1286, 1290.) However, plaintiffs' action in the present case is not against Monkman, the provider of the termite inspection report; rather, the action is against the sellers of the property. Unlike the provider of a termite inspection report, the seller of a home is not in the business of providing information. Likewise, unlike the defendants in *Lehmann*, the Thrashers were under no statutory duty to file information with a government or municipal authority, nor was information made a matter of public record. Hence, the Stewarts cannot recover from the Thrashers for purely economic loss resulting from alleged negligent misrepresentation.

Although plaintiffs' argument is framed in terms of negligent misrepresentation, the gist of plaintiffs' appellate argument appears to be the circuit court erred in finding there had been no fraudulent misrepresentation. Accordingly, we review the circuit court's ruling on the issue of fraudulent misrepresentation. Although the reviewing court will review facts as well as law after a bench trial, the judgment of the trial court will only be set aside if it is demonstrated that judgment is against the manifest weight of the evidence, *i.e.*, it is clearly evident a conclusion opposite to that reached by the circuit court was the proper disposition. (*Stone v. City of Arcola* (1989), 181 Ill. App. 3d 513, 528, 536 N.E.2d 1329, 1338.) A trial court's determination regarding whether the elements of fraudulent misrepresentation are present is a factual one and, thus, will not be disturbed unless it is contrary to the manifest weight of the evidence. *Gerill*, 128 Ill. 2d at 192-93, 538 N.E.2d at 536.

■ To sustain a claim of fraudulent misrepresentation, plaintiff must prove (1) a false statement of material fact; (2) that the party making the statement knew the statement was false or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on that statement and did, in fact, rely on it; (4) the statement

was made for the purpose of inducing the other party to act; and (5) that reliance by the person to whom the statement was made led to his injury. *Farm Credit Bank v. Isringhausen* (1991), 210 Ill. App. 3d 724, 728, 569 N.E.2d 235, 238.

In the present case, both parties testified the Thrashers made no affirmative representations to the Stewarts regarding the absence of termite infestation or damage due to such infestation. However, a misrepresentation may consist of the concealment of the truth as well as the assertion of what is false. When the failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and an affirmative misrepresentation is tenuous. Even if a statement is technically true, it may still be a misrepresentation where it omits qualifying material, because a half-truth may be more misleading than an outright lie. (*Lindsey v. Edgar* (1984), 129 Ill. App. 3d 718, 723, 473 N.E.2d 92, 96.) For concealment to amount to a misrepresentation, it must have been done with an intent to deceive under circumstances creating an opportunity and a duty to speak. (*Lindsey*, 129 Ill. App. 3d at 723, 473 N.E.2d at 96.) The concealed information must have been such that the other party would have acted differently had he been aware of it. *Huls v. Clifton, Gunderson & Co.* (1989), 179 Ill. App. 3d 904, 909, 535 N.E.2d 72, 76.

█ Thus, in the case of concealment, the analysis is modified, and in order to prove the concealment amounted to a fraudulent misrepresentation the plaintiff must prove: (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak (*Lindsey*, 129 Ill. App. 3d at 723, 473 N.E.2d at 96); (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury. *Huls*, 179 Ill. App. 3d at 909, 535 N.E.2d at 76.

In the present case, the circuit court essentially determined there had been no misrepresentation or concealment, because the Thrashers were also unaware of the termite infestation and damage. There can be no concealment of a fact if the party alleged to be concealing the fact is unaware of it. On appeal, plaintiffs allege the Thrashers were aware of the termite infestation and damage because Jeffrey had been in the crawl space, the remodeling done by the Thrashers had termite damage behind it, it seems incredible Jeffrey would not have asked

his mother what the results of a prior termite inspection report had been, and Monkman told Jeffrey that there was termite damage.

The circuit court's finding that the evidence did not establish the Thrashers became aware of the termite damage while remodeling the home was not against the manifest weight of the evidence. The plaintiffs allege that since Jeffrey had been in the crawl space, he must have been aware there was termite damage, which was visible in the crawl space. The plaintiffs additionally allege because Randall could see through to the outside of the house when he removed the register cover, and found damage under linoleum in a closet, the Thrashers must have noticed these defects when remodeling the property, and the defects would have put the Thrashers on notice of damage and possible infestation.

The evidence at trial established Jeffrey had been in the crawl space to repair the foundation, and along with his wife and brother, remodeled the interior of the home. The circuit court found no evidence was introduced to establish whether Jeffrey had been in a position to observe any of the termite damage, or the proximity of the area where the foundation had been replaced to the area damaged by termites. The circuit court additionally found the evidence did not establish the items replaced by the Thrashers when improving the interior of the property had termite damage, or that there was visible damage in the areas. It was within the province of the circuit judge, who heard the testimony and viewed the exhibits, to make such findings. Our review of the evidence does not clearly indicate an opposite conclusion should have been drawn.

Similarly, the circuit court's findings regarding the prior termite inspection report and the alleged conversation between Monkman and Jeffrey were supported by the evidence. Where there is a conflict in the witnesses' testimony, the reviewing court will not substitute its judgment for that of the trier of fact, whose function it is to determine the credibility of the witnesses' testimony and the inferences to be drawn therefrom. (*Harris v. Day* (1983), 115 Ill. App. 3d 762, 769, 451 N.E.2d 262, 265.) Although plaintiffs now allege it is incredible that Jeffrey would not have questioned his mother regarding a prior termite inspection of the property, no evidence was introduced regarding this prior termite report at trial. In fact, the circuit court stated in its ruling, "[t]he results of this inspection are not entirely clear to the court and little evidence was presented concerning it." Had the plaintiffs wished the inference that defendants knew of termite damage to be drawn from the prior inspection report, they should have introduced evidence regarding this prior report at trial. We cannot

now, on appeal, find Jeffrey had knowledge there was termite damage to the property based on a prior report, especially when no evidence was introduced regarding whether the report even disclosed the existence of termite damage.

Finally, plaintiffs allege Jeffrey knew of termite damage because Monkman told him there was termite damage to the house. Jeffrey testified Monkman did not tell him there was termite damage to the house. Monkman testified he did not tell Jeffrey there was termite damage to the house. His testimony was impeached with his deposition testimony, in which he stated he had told Jeffrey there was evidence of previous damage of termites. The circuit court determined it was not clear when or where the conversation between Jeffrey and Monkman took place, or what the substance of the conversation might have been. It was within the province of the court to determine the inferences to be drawn from the existence of the prior report, the contents of which were unknown, and to weigh the credibility of Monkman and Jeffrey. We do not find the circuit court's determination on these matters was against the manifest weight of the evidence, and we will not substitute our judgment for that of the circuit court.

The plaintiffs' final contention is the circuit court erred in finding there had not been a mutual mistake of fact. Plaintiffs allege that because the termite inspection report indicating no evidence of infestation was provided to them at the closing, they agreed to take the house free from termite infestation and damage, but "as is" in all other respects. In order to establish mutual mistake warranting rescission of a contract, plaintiff must show by clear and positive evidence that (1) both parties were mistaken regarding a material feature of the contract; (2) this matter is of such grave consequence that enforcement of the contract would be unconscionable; (3) the plaintiff's mistake occurred despite the exercise of reasonable care; and (4) the other party can be placed in the status quo. *Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 548, 536 N.E.2d 194, 200.

The circuit court's determination that the plaintiffs did not establish that any mistake regarding the termite infestation and damage was a material element of the contract was not against the manifest weight of the evidence. In order to be material, the condition must be essential to one of the parties and must be *mutually* agreed upon and understood by the parties. *Giacomazzi v. Urban Search Corp.* (1980), 86 Ill. App. 3d 429, 432, 407 N.E.2d 621, 624.

The circuit court determined the parties did not agree a successful termite inspection report was a condition of the sale of the

property. Whether an oral contract exists, as well as its terms and conditions and intent of the parties, are questions of fact. A reviewing court may not reverse a judgment of the circuit court just because different conclusions could be drawn. (*In re Estate of Kern* (1986), 142 Ill. App. 3d 506, 514, 491 N.E.2d 1275, 1280.) The circuit court found the parties entered into an oral contract for the purchase of the house for $17,000, and no other terms or conditions were set forth in the oral contract for sale. This finding is supported by the evidence. Both the plaintiffs and defendants presented testimony there was no discussion of termite infestation or damage during either of the two times plaintiffs toured the home. During the telephone conversation in which the oral contract for sale was entered into, the Stewarts did not state a satisfactory termite inspection report would be a condition to the purchase of the property. In fact, at no time did the Stewarts request that a termite inspection be performed. It was only at their lender's request such an inspection was conducted. The plaintiffs called their lender a few days before the closing to inquire whether a satisfactory termite report had been received. Plaintiffs allege they made this inquiry because, upon viewing the exterior of the home, they had become concerned there might be termite infestation. Whether this was the reason, or whether plaintiffs merely wished to ensure that all requirements had been complied with and the closing would go through as planned, was not specifically determined by the circuit court. However, even if plaintiffs' allegation were accepted as true, a concern of the plaintiffs which developed after the contract had been entered into and was never communicated to the other parties is not an agreed-upon element of the contract.

The circuit court additionally determined the conduct of the plaintiffs, in agreeing to take the property "as is," did not indicate they would not have purchased the house had they known of the infestation and damage. Plaintiffs testified they knew the house needed repairs. The fact the house needed repairs was reflected in the $17,000 purchase price for the two-story home. However, plaintiffs did not request to have the home professionally inspected to determine the extent of the repairs which would be required. Nor did the plaintiffs perform any significant inspection of their own. On the contrary, they made two short visits to the property before making an offer to purchase. During these visits, much of the time was spent sizing up and measuring the rooms to determine whether they would accommodate the plaintiffs' furniture. This conduct of the plaintiffs does not indicate their willingness to purchase the property was dependent upon the type and extent of the improvements which they would be re-

20

quired to make. Finally, at the closing the plaintiffs signed a settlement sheet agreeing to accept the property "as is." Plaintiffs allege they relied upon the termite inspection report in signing the "as is" settlement sheet, and wished to accept the property, free of termite damage infestation and "as is" in all other respects. Had plaintiffs wished to incorporate a guarantee the home was free from termite damage and infestation into the settlement sheet, they should have requested a provision be added to that effect. They did not.

We find the circuit court correctly determined the plaintiffs did not establish that the absence of termite damage and infestation was a material element of the contract.

The judgment of the circuit court of De Witt County is affirmed.

Affirmed.

McCULLOUGH and LUND, JJ., concur.