MARSHALL BAUER, Plaintiff-Appellee, v. NICK GIANNIS *et al.*, Defendants-Appellants.

Second District   No. 2—04—1155

Opinion filed August 16, 2005.

McLAREN, J., dissenting.

Alyssa M. Campbell and C. Barry Montgomery, both of Williams, Montgomery & John, Ltd., of Chicago, for appellants.

Richard A. Del Giudice and Earl E. Farkas, both of Gozdecki & Del Giudice, of Chicago, for appellee.

John G. O'Brien, of Law Offices of John G. O'Brien, Ltd., of Arlington Heights, for *amicus curiae*.

JUSTICE CALLUM delivered the opinion of the court:

## I. INTRODUCTION

Plaintiff, Marshall Bauer, purchased a home from defendants, Nick Giannis and Donna Giannis. Four years later, the basement flooded after a heavy rain. Alleging that defendants concealed that the basement had flooded once before the sale, plaintiff sued defendants

for fraud. The trial court denied defendants' motion for summary judgment and, finding that an "as is" clause contained in the real estate sale contract was unenforceable, granted plaintiff partial summary judgment.

Thereafter, the trial court certified three questions for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308): (1) whether the legal effect of the "as is" clause is different if the clause is viewed as a disclaimer as opposed to an exculpatory clause; (2) whether the "as is" clause is unenforceable and therefore not a defense to the fraud claims; and (3) if the clause is unenforceable, whether it is nevertheless admissible as evidence on the issues of fraudulent intent and reliance. We answer "no" to the first question. As a result, on the remaining questions, we hold that the "as is" clause is not a defense to the fraud claims and that the clause is not admissible on the issue of reliance.

## II. BACKGROUND

Plaintiff's complaint alleged that defendants listed their home in Bannockburn for sale during the summer of 1997. On September 7, 1997, plaintiff agreed to purchase the home for $1.7 million. On the residential real property disclosure report that defendants prepared pursuant to section 35 of the Residential Real Property Disclosure Act (Act) (765 ILCS 77/35 (West 1996)), defendants knowingly misrepresented that they were not aware of flooding or recurring leakage problems in the crawlspace or basement. Also, defendants concealed that, in May 1996, the home had flooded and sustained damage that required significant renovation.

In October 2001, plaintiff's basement flooded. One of the two basement rooms filled with water to the ceiling, and the second room filled almost to the ceiling. It was not until after the 2001 flood that plaintiff learned of the 1996 flood and the resulting damage and renovation.

As a result of the flood, plaintiff incurred substantial damages and had to take remedial measures that included hiring engineers, erecting berms, creating drainage pits, and installing drainage pipes, ejector pumps, and generators. The complaint asserted causes of action sounding in fraudulent misrepresentation and fraudulent concealment.

The parties engaged in extensive discovery. We recite only those facts necessary to understand the issues on appeal. Defendants first placed their home on the market in October 1994. On May 17, 1996, severe rainfall caused groundwater to fill a below-grade window well, stairway, and patio. The water shattered basement windows and

entered the basement on the northwest side of the home. A basement bedroom and a basement office filled to the ceiling. The flood caused $425,000 in damage to the home and personal property. The flood and its effect on specific homes in Bannockburn, including that of defendants, was discussed during a village board meeting and in the May 24, 1996, village administrator report.

Defendants took the home off of the market so they could repair the damage. They rebuilt the two basement rooms that filled with water, cleaned the crawl space and east side basement, refinished the floors of rooms above ground level, installed a new exterior sump pump, and replaced the interior sump pumps.

Defendants hired Daniel Creaney, a civil engineer, to assist them with their flood-control efforts. On May 28, 1996, Creaney recommended concentrating on the areas around the house from which storm water entered the basement, namely, the window well and the exterior stairwell. Creaney's proposal stated:

> "Please keep in mind that there may be several factors that may have contributed to the flooding in your basement. We will address the items mentioned above and the items we may find during our investigation. The grading plan, when implemented, will help alleviate the basement flooding, but we cannot guarantee that the basement will not flood again."

Creaney recommended, among other things, constructing a berm. Defendants hired Cal Nelson, a landscaper, to construct the berm around the northwest side of the home to divert ground water away from the lower level patio. Defendants asserted that the May 1996 incident was the only time the home flooded during the eight years they owned it.

Defendants placed the home back on the market. In September 1997, the home was listed at $2,775,000 and was appraised at $2.3 million.

During his deposition, plaintiff testified that defendants never informed him before the sale that the home had flooded in 1996. Defendant Nick Giannis testified that he told plaintiff about the flood and pointed out the newly constructed berm. Defendant Donna Giannis executed the disclosure report that the Act mandates. She answered "no" to the following statement: "I am aware of flooding or recurring leakage problems in the crawlspace or basement." The report makes two references to a potential "as is" sale. Located near the top of the form is the following statement: "This report does not limit the parties['] right to contract for the sale of residential real property in 'as is' condition." Located near the bottom of the form is the following statement: "Prospective buyer is aware that the parties

may choose to negotiate an agreement for the sale of the property subject to any or all material defects disclosed in this report ('as is')."

On September 5, 1997, the parties executed a rider to the real estate sale contract. The purpose of the rider was to add an "as is" clause that provided:

"Purchaser acknowledges and represents that Purchaser and his representatives have personally examined the Property and Personal Property on at least six occasions and [have] had the Property professionally inspected. Purchaser is fully aware of the condition of the Property and accepts the Property in its 'As Is' and '[Where] Is' condition, without any warranty or representation on the part of the Seller and Purchaser is fully satisfied with the condition of the Property."

During his deposition, Nick explained that he prompted his attorney to draft the rider for protection because he "had bad vibes." He testified that plaintiff knew about the flooding and that plaintiff's wife did not want to buy the home. Defendants' attorney, Ron Rosenblum, explained that he prepared the rider because he was frustrated over the number of times plaintiff inspected the home, and he wanted to clarify that defendants were not making any representations or warranties regarding the home.

On October 13, 2001, the home flooded due to heavy rain. The water entered through the garage, flowed into the crawlspace, and eventually flooded the basement office and bedroom with as much as eight feet of water.

Relying on the "as is" clause, defendants moved for summary judgment. The trial court found that the issue of reasonable reliance presented a fact question and therefore denied defendants' motion.

Plaintiff moved for a partial summary judgment declaring that the "as is" clause is against public policy and therefore unenforceable. The trial court granted plaintiff's motion. Defendants moved for reconsideration or alternatively for certification pursuant to Supreme Court Rule 308. The trial court denied the motion for reconsideration but certified the following three questions for appeal:

"(i) Whether, given the facts of the case, there is a difference in the legal effect of paragraph A-2 of the Real Estate Sale Contract Rider (herein 'Paragraph A-2') if it is viewed as an exculpatory clause or as a disclaimer clause;

(ii) Whether Paragraph A-2 is against public policy, unenforceable and void in the fraud case; and

(iii) Whether Paragraph A-2 is admissible evidence on the issues of fraudulent intent and reliance."

This court granted defendants' petition for leave to appeal.

## III. DISCUSSION

### A. Interlocutory Appeals Under Supreme Court Rule 308

■ Supreme Court Rule 308(a) provides in pertinent part:

> "When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. *** The Appellate Court may thereupon in its discretion allow an appeal from the order." 155 Ill. 2d R. 308(a).

The requirements of Rule 308 largely have been satisfied here. Although the first certified question begins with the qualifier, "given the facts of this case," the first two certified questions are purely questions of law, *i.e.*, whether the "as is" clause is enforceable. The third question is, if the clause is not enforceable, whether it nevertheless may be considered as probative evidence on intent and reliance. As we discuss further below, this is an evidentiary question that we are partly able to answer as a matter of law. The answers to the first two questions and to part of the third question will not "depend on the resolution of a host of factual predicates." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469 (1998). The questions we answer here address only the legal effect of the "as is" clause and do not depend on any contested facts. Deciding the legal effect of the clause at this time will establish the parameters of its use during the trial and therefore will materially advance the termination of the litigation. As with all questions of law, our review is *de novo*. *Thompson v. Gordon*, 356 Ill. App. 3d 447, 451 (2005).

### B. Enforceability of "As Is" Clause

■■ Plaintiff asserts claims for fraudulent misrepresentation and fraudulent concealment. The elements of fraudulent misrepresentation are (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Neurosurgery & Spine Surgery v. Goldman*, 339 Ill. App. 3d 177, 186-87 (2003). To prove fraudulent concealment, a plaintiff must establish that (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable

inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 706-07 (2002).

In support of his motion for partial summary judgment, plaintiff relied primarily on *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154 (1986). In that case, the plaintiffs purchased a home and later discovered that the home had numerous defects, including that the basement had flooded under four feet of water. The parties' real estate sale contract contained what the court described as an exculpatory clause:

" 'Purchaser acknowledges *** that neither the Seller, broker nor any of their agents have made any representations with respect to any material fact relating to the real estate, its improvements and included personal property unless such representations are in writing and further that Purchaser has made such investigations as Purchaser deems necessary or appropriate to satisfy Purchaser that there has been no deception, fraud, false pretenses, misrepresentations, concealments, suppressions or omission of any material fact by the Seller, the Broker, or any of their agents relating to the real estate, its improvements and included personal property.' " *Zimmerman*, 156 Ill. App. 3d at 159.

The defendants argued that the exculpatory clause protected them from liability for fraud. The court held that the exculpatory clause could not protect the defendants from the results of their wilful and wanton misconduct. To the extent that the defendants sought to raise the clause as a defense to fraud, an intentional tort, the clause was an illegal contractual shield. *Zimmerman*, 156 Ill. App. 3d at 164-65; see also *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 183 (2004) (public policy does not allow exculpatory contracts that protect against liability for wilful and wanton misconduct); *Falkner v. Hinckley Parachute Center, Inc.*, 178 Ill. App. 3d 597, 604 (1989) (assumption of risk, exemption from liability, and covenant not to sue clauses were against public policy to the extent they sought to preclude liability for wilful and wanton misconduct).

Defendants argue that the rule in *Zimmerman* does not apply here because the "as is" clause is merely a disclaimer of reliance and not an exculpatory clause. They point out the contractual language in *Zimmerman* that " 'there has been no deception, fraud, false pretenses, misrepresentations, concealments, suppressions or omission of any material fact by the Seller, the Broker, or any of their agents.' "

*Zimmerman*, 156 Ill. App. 3d at 159. According to defendants, the clause in *Zimmerman* was a true exculpatory clause because it declared in advance the legal conclusion that there had been no fraud. In contrast, the "as is" clause here declares facts, not legal conclusions. It merely states that plaintiff accepted the property "without any warranty or representation" by defendants.

We do not believe that the authority upon which defendants rely supports their contention. Defendants rely on two Illinois decisions involving oral representations that never were made part of the parties' written agreements. In *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450 (2004), the plaintiffs purchased $250,000 worth of shares in Telecom Capital Group (TCG). The subscription agreement contained what the court termed a "nonreliance" clause stating:

> " '[I]n evaluating the suitability of an investment by the undersigned Company, the undersigned has relied solely upon the materials made available to the undersigned at the undersigned's request and independent investigations made by the undersigned in making the decision to purchase the Preferred Membership Interests subscribed for herein, and acknowledges that no representations or warranties (oral or written), have been made to the undersigned with respect thereto.' " *Tirapelli*, 351 Ill. App. 3d at 453.

The subscription agreement also contained an integration clause stating that " '[t]he Subscription Documents constitute the entire agreement among the parties *** and may be amended only by a written execution of all parties.' " *Tirapelli*, 351 Ill. App. 3d at 453.

The subscription documents contained several warnings about various risks involved with the investment and required the plaintiffs to verify that they were "accredited investors," which the subscription documents defined, *inter alia*, as persons with net worths exceeding $1 million at the time of the purchase. According to the subscription documents, the investment was not registered pursuant to the federal securities laws and, thus, only accredited investors could purchase shares.

One of the purposes of TCG was to invest in technology-based companies. Part of that plan was to purchase and renovate real estate for use by those companies. The plaintiffs eventually lost all of their investments. Asserting violations of the Illinois Securities Law of 1953 (815 ILCS 5/12(F), (G), (I) (West 1998)) and common-law fraud, the plaintiffs sued. They alleged that the defendants made several false representations, including that (1) TCG owned a certain piece of real estate, had begun renovating it, and had entered into a lease of a portion of the property; (2) TCG had completed all the preliminary work for an initial public issue; and (3) few shares of TCG remained, and

the plaintiffs would lose the opportunity to invest unless they did so immediately. None of these representations was memorialized in the subscription agreement. The trial court granted the defendants summary judgment because the nonreliance and integration clauses made the plaintiffs' reliance on the oral representations unreasonable as a matter of law.

On appeal, the court affirmed. It reasoned that, "[h]aving agreed in writing that they did not rely on any representations found outside the subscription documents, plaintiffs cannot be allowed to argue fraud based on such representations." *Tirapelli*, 351 Ill. App. 3d at 457.

The court applied similar reasoning in *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117 (1995). In that case, the plaintiffs invested in a real estate syndication. Before investing, they received a private placement memorandum (PPM), which was an informational statement given to interested investors. It provided that the general partner was required to contribute only $100 to the capital of the partnership. The subscription agreement stated, " 'I have received and read the [PPM] and am hereby applying for the purchase of Units solely in reliance upon the information contained in the [PPM] and not in reliance upon any other information.' " *Adler*, 271 Ill. App. 3d at 122. After they lost their investments, the plaintiffs sued for fraud and violations of the Illinois Securities Law. They alleged that they relied on an oral representation that the general partner would financially back the syndication. The court held that the trial court properly dismissed the fraud claim because the alleged oral representation contradicted the PPM. Therefore, the plaintiffs could not justifiably have relied on the oral representation. *Adler*, 271 Ill. App. 3d at 126-27.

The reasoning of *Tirapelli* and *Adler* does not apply here. Those cases involved oral representations that were not a part of the parties' written agreements. Also, the decisions were based in part on the policies governing securities transactions. As the *Tirapelli* court stated, "[t]here are sound policy reasons for precluding fraud claims based on oral statements outside the written agreement where the agreement includes a nonreliance clause. *** [P]lacing primacy on the written word is a primary function of securities law and reduces the possibility of faulty memories and fabrication." *Tirapelli*, 351 Ill. App. 3d at 457; see also *Rissman v. Rissman*, 213 F.3d 381, 384 (7th Cir. 2000) (nonreliance clause ensures that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of fabrication).

■ Because the instant cause does not involve an oral representation, the policy of placing primacy on the written agreement does not

apply with equal force. Instead, this case involves the policy of disclosure reflected in the Act. Under the Act, the seller of residential real property must complete the disclosure form prescribed in section 35 of the Act. 765 ILCS 77/20 (West 2002). The seller must disclose material defects of which he or she has actual knowledge but is not obligated to make any specific investigation or inquiry in order to complete the report. 765 ILCS 77/25(b), (c) (West 2002). A person who discloses any information on the report that he or she knows to be false shall be liable for actual damages. 765 ILCS 77/55 (West 2002). A seller is not liable, however, for any error, inaccuracy, or omission made without the seller's knowledge, or where the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected. 765 ILCS 77/25(a) (West 2002).

Although plaintiff's claims sound in fraud and are not directly based on the Act, the policies underlying the Act militate against applying decisions such as *Tirapelli* and *Adler* to defeat plaintiff's claims. A fraudulent misrepresentation claim may be based solely on a disclosure made pursuant to the Act. *Rolando v. Pence*, 331 Ill. App. 3d 40, 46 (2002). Although the disclosure report is not a substitute for inspections or warranties, a purchaser is entitled to rely on the truthfulness, accuracy, and completeness of the statements contained therein. *Hogan v. Adams*, 333 Ill. App. 3d 141, 147-48 (2002). A buyer cannot waive the seller's responsibility to disclose certain defects by signing a contract without having received a written disclosure statement. *Curtis Investment Firm, Ltd. Partnership v. Schuch*, 321 Ill. App. 3d 197, 200 (2001). Allowing a seller to ignore his or her obligation under the Act, avoid reporting a material defect, and thereby defeat a buyer's subsequent claim would only encourage the evils the legislature sought to remedy. *Curtis Investment Firm*, 321 Ill. App. 3d at 200-01.

■ The policy prohibiting waiver of the obligations under the Act applies with equal force here. By insisting on the "as is" clause, which provides that plaintiff accepted the property without any warranty or representation, defendants in effect sought to obtain a waiver of their obligation under the Act to disclose material defects. The disclosure form does reserve the parties' right to contract for the sale of the property in "as is" condition. The form defines an "as is" agreement, however, as one "for the sale of the property *subject to any or all material defects disclosed in this report*." (Emphasis added.) We see nothing in the "as is" provisions of the disclosure form that may be read as allowing a seller to contract out of its disclosure obligations.

The plaintiffs in *Tirapelli* argued that the nonreliance clause was

in effect an exculpatory clause, which could not protect the defendants against liability for intentional torts. The court rejected this argument on the ground that none of the decisions that the plaintiffs cited "involved securities transactions between sophisticated parties." *Tirapelli*, 351 Ill. App. 3d at 458. This statement demonstrates that *Tirapelli* relied on special considerations relevant to securities transactions. Those special considerations are not present here.

Also, the *Tirapelli* court quoted favorably a statement in *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641 (7th Cir. 2002). *Tirapelli*, 351 Ill. App. 3d at 458. *Vigortone* involved a fraud claim arising out of oral assurances made in connection with the sale of a business. The parties' contract contained an integration clause but not a nonreliance clause. The court explained that an integration clause was merely an extension of the parol evidence rule. It held that, because the parol evidence rule is not a doctrine of tort law, an integration clause does not bar a claim of fraud based on statements not contained in the contract. *Vigortone*, 316 F.3d at 644. The court went on to explain:

> "One consequence of the rule is that parties to contracts who do want to head off the possibility of a fraud suit will sometimes insert a 'no-reliance' clause into their contract, stating that neither party has relied on any representations made by the other. [Citations.] Since reliance is an element of fraud, the clause, if upheld—and why should it not be upheld, at least when the contract is between sophisticated commercial enterprises—precludes a fraud suit ∗∗∗." *Vigortone*, 316 F.3d at 644-45.

We do not find *Tirapelli*'s mention of the *dicta* in *Vigortone* persuasive. First, like *Tirapelli*, the cases the *Vigortone* court cited in support of nonreliance clauses involved oral representations and therefore the policy of placing primacy on the written agreement. See *Rissman*, 213 F.3d at 383-84; *Jackvony v. RIHT Financial Corp.*, 873 F.2d 411, 416-17 (1st Cir. 1989); *First Financial Federal Savings & Loan Ass'n v. E.F. Hutton Mortgage Corp.*, 834 F.2d 685, 687 (8th Cir. 1987); *Landale Enterprises, Inc. v. Berry*, 676 F.2d 506, 507-08 (11th Cir. 1982); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21, 184 N.Y.S.2d 599, 601-02, 157 N.E.2d 597, 599 (1959). The instant cause involves a written disclosure that was required by the Act and upon which plaintiff was entitled to rely.

The authority defendants cite simply does not convince us that the answer to the first certified question should be "yes." Defendants seek to use the "as is" clause as a defense to the fraud claims, and none of the decisions defendants cite support enforcing the nonreliance clause against a written disclosure required by the Act. Accord-

ingly, our answer to the first certified question is "no." This means that our answer to the second certified question must be that the "as is" clause is not enforceable to the extent defendants seek to use it as a defense to the fraud claims.

## C. Admissibility of "As Is" Clause

■ Defendants argue that, even if the "as is" clause is not a defense to the fraud claims, it is nevertheless admissible as evidence relevant to the issues of fraudulent intent and reliance. Emphasizing that whether a plaintiff's reliance is justifiable depends on the circumstances, including all of the facts that the plaintiff knew and those facts the plaintiff could have learned through the exercise of ordinary prudence (*Schrager*, 328 Ill. App. 3d at 709), defendants argue that the existence of the clause and the circumstances surrounding its negotiation "are all part of the tapestry of facts that the jury should hear." We disagree. Above, we stated that a purchaser is entitled to rely on the truthfulness, accuracy, and completeness of the statements contained in the disclosure report. *Hogan*, 333 Ill. App. 3d at 147-48. Therefore, the "as is" clause is, as a matter of law, irrelevant to the reliance issue.

Moreover, we conclude that the final sentence of paragraph A-2 of the rider, wherein plaintiff accepts the property in "as is" condition without any warranty or representation, should not be admitted for any purpose. We have held that the clause is not a defense to the fraud claims. This conclusion is consistent with what we believe is the majority view: that "as is" language in a real estate sale contract does not shield a seller from liability for fraud. See *The S Development Co. v. Pima Capital Management Co.*, 201 Ariz. 10, 16, 31 P.3d 123, 129 (Ariz. App. 2001) (a vendor must disclose latent defects in property that are known to the vendor, notwithstanding the existence of a burden-shifting "as is" clause or disclaimer of warranties); *Wilson v. Century 21 Great Western Realty*, 15 Cal. App. 4th 298, 304, 18 Cal. Rptr. 2d 779, 782 (1993) ("as is" language in realty sales contract does not shield seller or its agent from liability for affirmative or negative fraud); *Mackintosh v. Jack Matthews & Co.* 109 Nev. 628, 632, 855 P.2d 549, 551 (1993) (noting that most states do not permit an "as is" clause to shield a seller who has fraudulently misrepresented the condition of property or who has intentionally concealed known defects); *Stemple v. Dobson*, 184 W. Va. 317, 323, 400 S.E.2d 561, 567 (1990) ("as is" clause in a real estate sale contract will not relieve the vendor of his or her obligation to disclose a condition that substantially affects the value or habitability of the property, is known to the vendor but not to the purchaser, and would not be disclosed by a reasonable

and diligent inspection); *Richey v. Patrick*, 904 P.2d 798, 803 (Wyo. 1995) (in the case of an actual misrepresentation or fraud, an "as is" clause will not relieve the seller of liability); *cf. Leatherwood, Inc. v. Baker*, 619 So. 2d 1273, 1274 (Ala. 1992) (holding that "as is" clause defeated reliance element of fraud claim). Considering this authority, we fail to see how the "as is" provision is relevant to any element of or defense to the fraud claims. The clause did not affect defendants' duty to disclose and accordingly had no bearing on their intent.

We agree with plaintiff that *Stewart v. Thrasher*, 242 Ill. App. 3d 10 (1993), does not support defendants' position. There, during the bench trial, the court considered an "as is" clause while deciding a claim for damages or contract rescission on the grounds of fraudulent misrepresentation, mutual mistake of fact, breach of the warranty of habitability, and violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121$\frac{1}{2}$, par. 261 *et seq.* (now 815 ILCS 505/1 *et seq.* (West 2002))). On appeal, the court discussed the "as is" clause only in connection with the mutual mistake claim and resolved the fraud claim on the ground that there was no evidence that the sellers were aware of the material fact they were alleged to have concealed. *Stewart*, 242 Ill. App. 3d at 16, 18. The reviewing court in *Stewart* did not indicate that the "as is" clause was relevant to the fraud claim. Here, plaintiff asserts only fraud claims, for which there is no independent reason to admit the disclaimer of warranties and representations.

We note that nothing in our decision should be read as precluding defendants from attempting to defeat the fraud claims by proving, for example, that the defect was not latent (*Mitchell v. Skubiak*, 248 Ill. App. 3d 1000, 1005 (1993) (liability for fraud will not be imposed for real estate vendor's silence about defects if purchaser was aware of defects prior to purchase or could have discovered them through diligent inspection)) or that they in good faith believed that they corrected whatever problems caused the 1996 flood (765 ILCS 77/25(a)(ii) (West 1996)). We hold only that the "as is" clause will not shield defendants from liability for fraud.

Defendants argue that the clause is relevant to other issues. They claim that the statement that plaintiff and his representatives examined the home at least six times is relevant to whether defendants attempted to conceal any defects and to plaintiff's knowledge of the condition of the premises. Also, defendants assert that the statement that plaintiff had the property professionally inspected is relevant because it conflicts with plaintiff's deposition testimony. Any answer to these questions would be premature because, although we have reviewed the limited discovery materials included in the record, we do

not know what the evidence at trial will be. These are questions that we cannot answer as a matter of law and are better left to the trial court's discretion as the trial unfolds.

## IV. CONCLUSION

We answer the certified questions as follows: (1) there is no difference in the legal effect of paragraph A-2 of the real estate sale contract rider if it is viewed as a disclaimer clause instead of an exculpatory clause; (2) paragraph A-2 is not enforceable as a defense to the fraud claims; and (3) the final sentence of paragraph A-2 of the rider, wherein plaintiff accepted the property in "as is" condition without any warranty or representation, may not be admitted for any purpose. We leave open whether the first sentence of paragraph A-2 is admissible.

Certified questions answered; cause remanded.

BYRNE, J., concurs.

JUSTICE McLAREN, dissenting:

I respectfully dissent. Supreme Court Rule 308 is an exception to the general rule that only final orders are subject to appellate review. Rule 308 allows permissive interlocutory appeals and is to be used sparingly. *Morrissey v. City of Chicago*, 334 Ill. App. 3d 251, 257 (2002). Thus, appeals under Rule 308 must be limited to exceptional cases, wherein the trial court:

> "[F]inds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved." 155 Ill. 2d R. 308(a).

The rule should be strictly construed and sparingly exercised. *Voss v. Lincoln Mall Management Co.*, 166 Ill. App. 3d 442, 445 (1988).

The briefs, the record, and the majority disposition reveal that the interlocutory order does not involve a question of law as to which there is a substantial ground for difference of opinion or that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Rather, questions of fact frame the issues. The briefs, the record, and the majority disposition are replete with references to facts peculiar and specific to this case as the basis for obtaining answers that coincidentally would result, if defendants prevail, in the reversal of the partial summary judgment previously

granted by the trial court, which is surreptitiously being appealed under the guise of a Rule 308 appeal.

Defendants essentially concede that an "as is" clause is typically not a defense to fraud claims. But defendants claim that this case is an exception to the typical case; that "the particular facts of this case" would allow such to be a viable defense. The problem is that, by addressing this issue in a Rule 308 appeal, we should be deciding whether public policy allows *any* "as is" clause to be used as a defense, not simply whether the peculiar facts in this case should be reviewed in such manner as to reverse the partial summary judgment granted in this case. Defendants are not asking this court to decide a question of law. They are not asking this court to determine whether a disclaimer or an "as is" clause is *per se* unenforceable. Rather, defendants are asking this court to decide a mixed question of law and fact. In defendants' brief, they ask this court to determine "[w]hether, given the facts of the case, there is a difference in the legal effect of paragraph A-2 of the Real Estate Contract Ride[r]." Similarly, defendants' prayer for relief asks this court to consider the facts of this case in making its determinations regarding the certified questions. They are not referring to sundry incidental facts that underlie all questions of law. Rather, they are requesting that we review virtually the entire record, including discovery.

Regarding the second certified question, there is not a substantial ground for a difference of opinion. The law is well settled that a contractual clause cannot be used to avoid fraud liability in a residential real property transaction. See *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154 (1986).

Furthermore, I submit that this appeal will not materially advance the termination of this litigation when it merely relates to one aspect of an affirmative defense. I submit that this is a thinly veiled attempt at a review of the grant of partial summary judgment upon a count alleging an affirmative defense. This is allegedly only a question of law because defendants are claiming that there are no material issues of fact and that the only matter that remains is the question of law to be decided on the undisputed facts. If this were a proper basis for review under Rule 308, I believe there would be precedent to cite to for support. Ironically, considering the questions certified and answered and the request to reverse the summary judgment, it is difficult to see how this is a question of law upon which reasonable minds could differ. If it were, then summary judgment should not have been granted, because it is based upon the premise that there are *no* material issues of fact upon which reasonable minds could differ as to the mixed questions of law and facts involved. How can there be a substantial ground

for difference of opinion if summary judgment is a drastic measure that should be allowed only when the right of the moving party to judgment is free and clear from doubt? If there is a substantial ground for difference of opinion, why is the majority effectively affirming the summary judgment? See *Olson v. Etheridge*, 177 Ill. 2d 396, 404 (1997), citing *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Simply put, this is a paradox.

In *Dowd & Dowd, Ltd. v. Gleason*, 284 Ill. App. 3d 915, 920 (1996), the trial court certified a question pursuant to Supreme Court Rule 308(a) as to whether the plaintiff stated a cause of action against the defendants. The appellate court answered the certified question and was reversed by our supreme court, which accepted the appeal but declined to answer the certified question even though the appellate court stated, "We first address the question of law certified by the trial court pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)) because it is a foundation for disposing of other issues presented in the case." *Dowd & Dowd*, 284 Ill. App. 3d at 925. Despite the fact that the appellate court found it foundational in its analysis addressing summary judgments on multiple counts, our supreme court stated as follows:

> "Although the matter is framed as a question of law, we believe that any answer here would be advisory and provisional, for the ultimate disposition *** will depend on the resolution of a host of factual predicates. For proof that factual issues remain, we need look no further than the trial judge's ruling on the defendants' motion for summary judgment on this count: in denying the motion, the trial judge stated that issues of material fact remained, which precluded entry of summary judgment." *Dowd & Dowd*, 181 Ill. 2d at 469.

Although the majority here is effectively affirming the partial summary judgment, I believe that the same principle stated above applies to the certified questions in this case. The certified questions necessarily involve factual considerations and can be answered by the majority only via referencing and incorporating the myriad factual predicates (uncontroverted facts). The certified questions are so dependent on the plethora of facts specific to this case that the majority disposition constitutes an advisory opinion, because it is *sui generis*, and a provisional opinion, because of the remaining unresolved counts, issues, and facts to be determined at trial.

Last and least, the third certified question concerns " '[w]hether Paragraph A-2 is admissible evidence on the issues of fraudulent intent and reliance.' " 359 Ill. App. 3d at 901. The majority then proceeds to enlarge the breadth of this certified question to cover all possible

scenarios. "Moreover, we conclude that the final sentence of paragraph A-2 of the rider, wherein plaintiff accepts the property in 'as is' condition without any warranty or representation, should not be admitted for any purpose." 359 Ill. App. 3d at 908. In response to alternative arguments relating to other bases for admissibility, the majority wisely exercises restraint in the penultimate page of the opinion, stating, "Any answer to these questions would be premature because, although we have reviewed the limited discovery materials included in the record, we do not know what the evidence at trial will be. These are questions that we cannot answer as a matter of law and are better left to the trial court's discretion as the trial unfolds." 359 Ill. App. 3d at 909-10. "The admissibility of evidence is a matter within the sound discretion of the trial judge, whose decision will not be reversed absent a clear abuse of discretion." *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 179 (2003). I submit that it is presumptuous of this court to anticipate the admissibility of any evidence prior to trial.

Rather than exercise restraint as our supreme court did in *Dowd*, the majority has determined, through an interlocutory appeal prior to trial, that the exclusion of evidence would not be an abuse of discretion. Considering the latitude that this majority has given itself to exercise functions and prerogatives of the trial court, it is reasonable to conclude that the restraint exhibited in *Dowd* is vitiated and that this court has jurisdiction to try a case so long as the trial court is willing to certify it to the appellate court for adjudication on the merits.

Although well-intentioned, the majority opinion adds nothing to the present body of law, does not answer a question of law for which there is substantial ground for difference of opinion, does not materially advance the termination of the litigation, and constitutes a provisional and advisory opinion on the question of whether the partial summary judgment was providently granted. This court should exercise the same discretion and restraint that our supreme court exhibited in *Dowd & Dowd* and refuse to answer the questions certified by the trial court. I therefore refuse to either agree or disagree in the answers and the analysis of the majority disposition.