NO. 4-01-0974

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DONNA J. HOGAN and SARAH COLE,

          Plaintiffs-Appellants,

          v. 

WILLIAM B. ADAMS and WILMA ADAMS,

          
Defendants-Appellees.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Sangamon County

  No. 99LM777

      

  Honorable

  Stuart H. Shiffman,

  Judge Presiding.

______________________________________________________________

JUSTICE TURNER 
delivered the opinion of the court:

In April 1999, plaintiffs, Donna J. Hogan and Sarah Cole, filed a two-count complaint against defendants, William B. and Wilma Adams, alleging a violation of the Residential Real Property Disclosure Act (Act) (765 ILCS 77/1 through 99 (West 1998)) and common-law fraud related to plaintiffs' purchase of defendants' home.  After an October 2001 bench trial, the trial court found in favor of defendants on both counts.  Plaintiffs appeal, contending (1) the trial court erred in finding a violation of the Act required a showing of bad faith, (2) the trial court erred in finding a residential-property purchaser was required to investigate a seller's disclosure under the Act, and (3) the trial court's judgment was against the manifest weight of the evidence.  We affirm in part, reverse in part, and remand with directions.

I. BACKGROUND

In May 1993, defendants purchased the subject property, commonly known as 25 Marquette Road, Springfield, Illinois.  The house located on the property was bi-level.  The basement level consisted of two bedrooms, a bathroom, a recreation room, a billiards room, and a laundry/utility room.  A door in the laundry room led to an outside stairwell.  At the bottom of the stairwell was a sump pump pit with a sump pump.  Another sump pump pit was located adjacent to the home's foundation on the northeast corner of the home.  

In April or May 1995, after a tornado, the power went out and the stairwell sump pump could not operate.  Water entered the basement under the laundry room door, saturating the carpet in a large portion of the basement.  As a result of the water, the carpets had to be pulled out and the carpet pad replaced.  Defendants also replaced the stairwell sump pump in 1995.  

In May or June 1996 after a large rainfall, water again entered the basement saturating the carpet of a large portion of the basement.  This time the stairwell sump pump was operating.  The carpet was again removed but this time was reinstalled without a carpet pad.

A third incident occurred when an outside drain became clogged and a small amount of water entered the basement under a patio door.

In April 1998, defendants hired Peter Steward as a real estate agent to sell the home.  On April 10, 1998, defendants completed a residential real property disclosure report (disclosure report) as required by the Act (see 765 ILCS 77/20, 35 (West 1998)).  Steward and defendants' friend Pam Morgan were present when defendants completed the disclosure report.  Defendants marked "yes" on line No. 2 that states "I am aware of flooding or recurring leakage problems in the crawl space or basement."  On the lines provided to explain any "yes” marks, defendants wrote "#2 tornado in 1995 interrupted power for 3 hours[--]sump pump was unable to operate and water entered lower[-]level well."

On April 20, 1998, plaintiffs made an offer to purchase the home.  On that date, plaintiffs signed the disclosure report.  The parties eventually entered into a contract for the purchase of the home for $125,500, and the property was conveyed to plaintiffs on May 28, 1998.  Steward acted as a dual agent.

On June 11, 1998, water entered the basement under the laundry room door.  Joseph "Jody” Hogan, Donna's husband, noticed the stairwell sump pump was not working, and he could not get it to function properly.  The water was in the hallway, the bedrooms, the family room, and the laundry room.  The next day, plaintiffs had a new sump pump installed in the stairwell.

On June 18, 1998, the same areas in the basement were again covered by water that had come in under the laundry room door.  The sump pump was working properly when the water entered the basement.

As a result of the flooding, plaintiffs had the basement cleaned and new carpeting installed.  Plaintiffs also purchased a new sump pump, drywall, and bathroom vanity and changed the grade of the yard with new landscaping.  

In April 1999, plaintiffs sued defendants seeking damages for a violation of the Act and common-law fraud.  On October 11, 2001, the trial court held a bench trial.  Plaintiffs presented the testimony of Jody, Donna, Steward, the contractors hired by plaintiffs to make repairs after the June 1998 floods, and William as an adverse witness.

William testified he and his wife decided to sell their home because his employer required him to move to a different state.  He further stated he had knowledge of the two flooding occurrences when he completed the report.  He also stated he knew he had to disclose a defect in full.  According to William, after writing down the first occurrence, Steward told defendants that was all that was required.  William testified Steward had full knowledge of both flooding events when William was writing the explanation.  William also testified it was his understanding he only needed to include an example of flooding in the explanation section of the disclosure report.

Steward testified he told defendants to fill out the report to the best of their ability.  He further stated defendants only told him about one flooding incident in which the water was confined to the laundry room.  Steward recalled a conversation in the laundry room between William and Jody where William told Jody the same information about the one flooding incident.  Steward testified when he went through the home, he never noticed any evidence of prior flooding.  He also testified he usually tells buyers to investigate all disclosures.

Donna testified she went through the home three times before purchasing it and did not notice any water damage.  After purchasing the home, she noticed water lines on the furnace and in the bedrooms.  She testified she and her husband had been concerned about the slope of the yard, but William and Steward had told her husband that they did not have water except for a trickle in the well area.  She never was a part of a discussion with defendants about water in the lower level.  Donna also testified they have not had water in the lower level since the grade of the yard was changed with landscaping. 

Jody testified he went through the home with William before plaintiffs purchased the home.  When they were in the laundry room, Jody asked if they ever got water in here and William replied that in 1995, the sump pump stopped, and water came in and went over to the drain.  Jody also testified William told him to keep the sump pump and the drains in the yard clean.

Defendants presented the testimony of Morgan, themselves, and a plumber.

Morgan testified she was visiting defendants when they were filling out the report with Steward.  She recalled a discussion about all three of the water incidents with Steward present.  According to Morgan, William wanted to put more down on the report about the flooding, but Steward told him to just put down an example.  Steward said it was not necessary to put all the information down.

William testified other measures existed to keep water out of the house.  Besides the sump pumps, indentations in the ground directed water away from the home, and the area near the home contained surface drains, a retaining wall, and a gravel pit.  Because of the location of the sump pumps, William would have to clean them sometimes as often as two times per week for them to run properly.  After the two floods, defendants did not make any changes to the home because they believed the floods were isolated events. 

As to the disclosure report, William testified he had never completed a report before April 1998.  Steward told defendants they had to disclose the flooding even if they believed it might never occur again.  William testified he discussed the three water incidents with Steward.  Steward did not give William any suggestions regarding the explanation but he did agree with the language William used.

William further testified he was the one who initiated the discussion about water in the basement with Jody and Steward.  William stated he told Jody that if the sump pump was not kept clean, it would not function and water would get in the house.  According to William, plaintiffs never asked for an explanation of the disclosure report or whether the basement got water.

Wilma testified she did not discuss basement flooding with Donna.  Wilma also testified she and Donna were present when William stated the home would get water if the occupants did not keep the sump pump and yard drains clean.

On October 15, 2001, plaintiffs submitted a second-amended computation of damages and a statement of costs with damages totaling $20,939.09 and costs at $1,741.25.  On October 26, 2001, the trial court issued a memorandum opinion finding in favor of defendants on both counts.  This appeal followed.

II. ANALYSIS

A. State of Mind

Plaintiffs first assert the trial court erred in ruling a violation of the Act requires a showing of bad faith.  Thus, the question before us is what state of mind of the seller-defendant does the Act require for a buyer-plaintiff to recover for a violation of the Act.  Because the interpretation of a statute is a question of law, our review is 
de
 
novo
.  
People v. Shanklin
, 329 Ill. App. 3d 1144, 1145, 769 N.E.2d 547, 548 (2002).

In interpreting a statute, a fundamental canon is to ascertain and give effect to the intention of the legislature.  Such an inquiry appropriately begins with the language of the statute itself, as the language used by the legislature is the best indication of legislative intent.  
People v. Bowden
, 313 Ill. App. 3d 666, 668, 730 N.E.2d 138, 140 (2000). 

Section 55 of the Act states, in pertinent part, the following:

"A person who 
knowingly
 violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the [r]esidential [r]eal [p]roperty [d]isclosure [r]eport that he knows to be false shall be liable in the amount of actual damages and court costs ***."  (Emphasis added.)  765 ILCS 77/55 (West 1998).

Additionally, section 25(a)(i) of the Act (765 ILCS 77/25(a)(i) (West 1998)) states the seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to the Act where the seller had no 
knowledge
 of the error, inaccuracy, or omission.  Accordingly, the Act attaches liability to knowing violations.  See 
Woods v. Pence
, 303 Ill. App. 3d 573, 576, 708 N.E.2d 563, 565 (1999) (a violation of the Act must be done knowingly). 

In this case, citing two cases from other states (
Amyot v. Luchini
, 932 P.2d 244, 247 (Alaska 1997); 
Engelhart v. Kramer
, 570 N.W.2d 550, 553-54 (S.D. 1997)), the trial court determined liability would not attach to misrepresentations made in good faith.  The court noted "[g]ood [f]aith emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."  The trial court concluded the evidence did not establish defendants acted in bad faith.  

Unlike the statutes addressed in 
Amyot
 and 
Engelhart
 (see Alaska Stat. §34.70.060 (Lexis 2000); S.D. Codified Laws §43-4-41 (Michie 1997)), the Illinois Act does not use the term "good faith."  Under the Act, a plaintiff need not prove the defendant actively concealed the material defect.  The Act requires the seller to disclose known defects and imposes liability for failure to do so.  
Woods
, 303 Ill. App. 3d at 577, 708 N.E.2d at 565.  The Act also imposes liability on the seller for any material error, inaccuracy, or omission of any information delivered under the Act if the seller had knowledge of the material error, inaccuracy, or omission.  See 765 ILCS 77/25(a)(i), 55 (West 1998)). 

Moreover, defendants did not assert at trial that they were not liable because the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected (see 765 ILCS 77/25(a)(ii) (West 1998)).  Thus, defendants' reasonable belief is not at issue in this case.

 Accordingly, the trial court did not apply the appropriate standard. 

B. Purchaser's Duty To Investigate

Plaintiffs next contend the trial court erred in finding a purchaser had a duty under the Act to further investigate disclosures.  Again, we are required to interpret the Act and apply a 
de
 
novo
 standard of review.  See 
Shanklin
, 329 Ill. App. 3d at 1145, 769 N.E.2d at 548. 

In reviewing the Act, we find no language that requires a purchaser to further investigate a disclosure of a defect made on the report to determine its completeness.  The language of section 35 encourages the purchaser to have an inspection done because defects 
unknown
 to the seller may exist.  See 765 ILCS 77/35 (West 1998).  While the disclosure report is not a substitute for inspections or warranties, a purchaser is entitled to rely on the truthfulness, accuracy, and completeness of the statements contained therein.  See 
Woods
, 303 Ill. App. 3d at 577, 708 N.E.2d at 565.  In fact, a buyer's knowledge of a defect does not relieve a seller from liability under the Act.  See 
Woods
, 303 Ill. App. 3d at 577, 708 N.E.2d at 565.  However, we agree with the Third District that such knowledge by the purchaser is relevant to the amount of damages awarded to a successful plaintiff.  See 
Woods
, 303 Ill. App. 3d at 577, 708 N.E.2d at 565.

Here, the trial court noted the mention of the one incident was not a complete disclosure but the disclosure along with the positive response to question No. 2 was "sufficient information to require a reasonable purchaser to make further inquiry."   The trial court further stated a "buyer cannot be silent through the disclosure process and then seek recovery based upon this failure to obtain additional information.  Reasonable action is necessary for both parties to a contract."  

Accordingly, the trial court erred in considering plaintiffs' failure to further investigate the disclosure in determining defendants' liability under the Act.    

C. Manifest Weight of the Evidence

Plaintiffs next contend the trial court's judgment was against the manifest weight of the evidence.  A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence.  
Bazydlo v. Volant
, 164 Ill. 2d 207, 215, 647 N.E.2d 273, 277 (1995).

  The Act imposes liability for a knowing violation of the duties prescribed by the Act.  765 ILCS 77/55 (West 1998); 
Woods
, 303 Ill. App. 3d at 576, 708 N.E.2d at 565.  The Act requires the seller to complete all applicable items in the disclosure report described in section 35 of the Act (765 ILCS 77/35 (West 1998)) and to disclose all material defects of which the seller has actual knowledge.  765 ILCS 77/20, 25(b) (West 1998).  

Here, the trial court found the case hinged upon the state of mind of the seller in completing the disclosure form.  As determined earlier, the trial court applied the incorrect standard.  Applying the correct state-of-mind requirement, we find the trial court's judgment as to the violation of the Act was against the manifest weight of the evidence.

At trial, the evidence was uncontested that when defendants completed the disclosure report, they knew their basement had flooded on two occasions.  The first flood was the result of a sump pump not working due to power failure and the second occurred even with a functioning sump pump.  Both floods covered a majority of the basement.

On the disclosure report, defendants marked "yes" on line No. 2 that states "I am aware of flooding or recurring leakage problems in the crawl space or basement."  On the lines provided to explain any "yes” marks, defendants wrote "#2 tornado in 1995 interrupted power for 3 hours[--]sump pump was unable to operate and water entered lower[-]level well."    

Thus, at a minimum, defendants did not disclose the actual extent of the flooding with the 1995 flood.  The explanation stated the flooding occurred in the stairwell rather than the majority of the basement living space.  Additionally, defendants did not disclose the 1996 flood, which again covered a majority of the basement and occurred even though the sump pump was properly functioning.  Defendants' explanation is particularly misleading because it suggests flooding would only occur if the sump pump was not properly functioning.  We also note the word "recurring” modifies the word "leakage” and not "flooding."  Thus, marking "yes” on line No. 2 of the report does not in itself disclose more than one flooding event.  

William testified he knew he had to fully disclose all material defects.  However, William later testified that after consulting with Steward, William believed only an example of flooding was necessary.  William knew Steward was a realtor, not an attorney.  The disclosure report itself suggests a seller should consult an attorney before completing the disclosure report.  See 765 ILCS 77/35 (West 1998).     

Based on the above evidence, defendants had knowledge the information they disclosed contained a material error, inaccuracy, or omission.  Thus, the trial court's judgment regarding the violation of the Act was against the manifest weight of the evidence.  Because defendants challenged the amount of damages incurred by plaintiffs, the cause must be remanded for a trial on the issue of damages only.

As to the common-law fraud count, the trial court found plaintiffs did not establish a false statement.  Plaintiffs did not challenge that finding.  

   III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment on the common-law fraud count, reverse on the violation-of-the-Act count, and remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded with directions.

KNECHT and STEIGMANN, JJ., concur.