# Illinois Official Reports

## Appellate Court

---

### *Messerly v. Boehmke*, 2014 IL App (4th) 130397

---

| | |
|---|---|
| Appellate Court Caption | RICHARD MESSERLY and RHONDA MESSERLY, Plaintiffs-Appellants, v. ROBERT E. BOEHMKE, SR., Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-0397 |
| Filed | March 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The entry of summary judgment for defendant in an action alleging that defendant violated the Residential Real Property Disclosure Act and that plaintiffs suffered damages as a result of defendant's failure to complete the disclosures required under the Act in connection with the sale of his house to plaintiffs was reversed, since plaintiffs did not waive defendant's obligations under the Act and genuine issues of material fact existed as to whether there were material defects in the plumbing system and the foundation of the house. |
| Decision Under Review | Appeal from the Circuit Court of Macoupin County, No. 04-LM-53; the Hon. Patrick J. Londrigan, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Edward T. McCarthy (argued), of McCarthy & Allen, of Edwardsville, for appellants.<br><br>Rick Verticchio and Gina Verticchio (argued), both of Verticchio & Verticchio, of Gillespie, for appellee. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Turner and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1      In March 2004, plaintiffs Richard and Rhonda Messerly filed a complaint against defendant, Robert E. Boehmke, Sr. Plaintiffs' third amended complaint alleged (1) defendant violated the Residential Real Property Disclosure Act (Act) (765 ILCS 77/25 (West 1998)) and (2) plaintiffs incurred damages due to the incomplete disclosures. Both parties moved for summary judgment. The trial court granted defendant's motion.

¶ 2      On appeal, plaintiffs claim the record contains evidence defendant knowingly violated the Act and the trial court erroneously concluded plaintiffs could waive defendant's obligations under the Act. Plaintiffs also ask this court to reverse the trial court's grant of summary judgment in favor of defendant and order the trial court to grant their motion for summary judgment as to defendant's liability. We reverse.

¶ 3                                I. BACKGROUND
¶ 4                            A. Plaintiffs' Allegations
¶ 5      In the July 2010 amendment to plaintiffs' complaint, they alleged on September 29, 1998, they purchased a home from defendant, at 105 Shelby, in Gillespie, Illinois, for $87,000. On or about August 7, 1998, defendant filled out and signed the disclosure report. Plaintiffs alleged defendant violated the Act as the disclosure report was false and incomplete because it did not disclose material defects in the home's foundation and plumbing system. See 765 ILCS 77/25(b) (West 1998). Plaintiffs alleged the plumbing system in the property was seriously defective so as to require repairs in excess of $15,000 but less than $50,000. They claimed the foundation and wall of the premises were and are unstable and continue to settle, sink, and move, causing additional damages. Plaintiffs requested judgment for over $50,000 plus court costs and reasonable attorney fees.

¶ 6                                 B. Discovery
¶ 7                            1. *The Disclosure Form*
¶ 8      In August 1998, prior to the sale, defendant filled out a "Residential Real Property Disclosure Report" (disclosure form) as required under the Act. See 765 ILCS 77/35 (West 1998) (specifying the required disclosure report form). The disclosure form indicated the address of the property and included blanks consisting of 22 statements. The disclosure form required the seller to fill in "yes" or "no" to indicate his or her knowledge of specific defects in the property. *Id.*

¶ 9    Defendant answered question Nos. 1 through 17 on the form, answering "no" to all the questions answered except question No. 4. Question No. 4 states, "I am aware of material defects in the basement or foundation (including cracks and bulges)." *Id.* Defendant answered "yes" to this question. In the space provided to explain defendant's affirmative answer, defendant stated, "no damages from water in basement from crack."

¶ 10   Question No. 6 asked if defendant was "aware of material defects in the walls or floors" (*id.*) and defendant answered "no." Defendant also answered "no" to question No. 8, which asked if he was "aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool)." *Id.* Defendant did not answer question Nos. 17 through 22. Question No. 17 asked if defendant was "aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises." *Id.*

¶ 11   A space on the form is provided for signatures along with a space for the date. Defendant signed the disclosure form and wrote "August 8, 1998," next to his name. Plaintiffs also both signed the disclosure form and wrote "August 25, 1998," next to their names.

¶ 12                              2. *The Letter From Defendant's*
                                       *Insurance Company*

¶ 13   Prior to October 1991, defendant submitted a claim to his insurance carrier, State Farm Fire and Casualty Company (State Farm). State Farm responded with a letter dated October 30, 1991, and addressed to defendant, stating State Farm had received a report for the Illinois Mine Subsidence Insurance Fund (Fund). State Farm indicated the Fund had investigated defendant's claim and concluded "the damage to your home is not the result of mine subsidence but rather settling." The letter stated damage from settling was specifically excluded from defendant's homeowner's insurance policy and denied defendant's claim.

¶ 14                        3. *Richard Messerly's Deposition Testimony*

¶ 15   Richard testified he purchased the house at 105 Shelby from defendant in 1998. Richard lives in the house with his wife, Rhonda; his son; and his son's girlfriend and two children.

¶ 16   Richard stated within two days of moving into the house his children took a shower downstairs and "water was leaking all over the place." Specifically, the water was "coming out of the wall itself and leaking down into the basement floor." Richard's wife Rhonda contacted defendant, who indicated a certain wrench or extension was necessary to tighten the area where the leak occurred. Richard called a plumber, who told him the problem was poor craftsmanship and the only way to fix it was to tear it all out. Richard did not fix the shower.

¶ 17   The plumber found other necessary repairs, including some he believed violated health codes. A later inspection by the Illinois Department of Public Health found 21 violations. Richard also mentioned that shortly after moving in the family noticed an "excessively bad odor in the home." Richard testified the odor was caused by a defective drain line from the furnace system.

¶ 18   Richard also stated he was aware of the letter from State Farm to defendant regarding settling on the property. Richard indicated after moving into the home he discovered shelving and a "plaster-type finish" covered cracks in the basement, some of which leaked water into

- 3 -

the basement. Richard stated he believed defendant covered the cracks or knew they were covered because defendant and his late wife were the only people to live in the house.

¶ 19    Richard and Rhonda called HelioTech to investigate the foundation and basement wall. HelioTech told Richard repairs would be very expensive. Richard stated he had documents from HelioTech detailing why the damage had occurred and specifically what repairs would be required.

¶ 20                    4. *Rhonda Messerly's Deposition Testimony*

¶ 21    Rhonda stated she called defendant about the leak in the basement bathroom. Defendant told her to take the ceiling tile (a drop-ceiling tile) off the top of the shower and get an extension on a wrench to tighten the pipe. Rhonda also testified she called defendant regarding a foul smell in the house. Defendant told her sometimes the hoses in the basement need to be changed out. These hoses came from the furnace and air conditioner. The plumber changed these hoses and "it got rid of the smell *** for a short time." Like her husband, she stated cracks in the basement were covered with shelving and plaster.

¶ 22                         C. The Parties' Motions for
                              Summary Judgment

¶ 23    Defendant filed a motion for summary judgment, arguing plaintiffs had not presented an issue of material fact concerning defendant's failure to disclose material defects in the plumbing system. Defendant also argued he did not disclose any knowledge of mine subsidence on the property because he was advised by State Farm no mine subsidence occurred on the property. Defendant further argued plaintiffs had no evidence to show he failed to disclose foundation and subsidence issues.

¶ 24    Along with the motion for summary judgment, defendant filed an affidavit he authored, denying knowledge of material defects concerning the plumbing system of the home. Defendant stated, "pursuant to correspondence on or about October 30, 1991, [State Farm] advised [defendant the Fund] had determined no mine subsidence event occurred on the property[;] however, the cracks in the basement floor were the result of settling." Defendant also conceded he filed a claim with State Farm regarding cracks in the basement. Defendant strongly denied any "material defects or wrong doing concerning the property."

¶ 25    Plaintiffs filed a response and cross-motion for summary judgment, arguing they had presented evidence demonstrating that, at closing, defendant had actual knowledge of material defects in the plumbing system. Plaintiffs requested summary judgment as to defendant's liability for failing to disclose defects caused by settling, arguing defendant failed to answer question No. 17 on the disclosure from, which mentioned settling. Plaintiffs also argued defendant admitted State Farm advised him the Fund determined settling caused damages to the property.

¶ 26                         D. The Trial Court's Order

¶ 27    The trial court granted defendant's motion for summary judgment, holding the record contained no evidence "defendant[ ] knowingly disclosed false information or failed to disclose any known material defects in the residence." The court also found defendant's failure

"to complete the [disclosure form] in full and the plaintiff[s'] acceptance of the disclosure form waives any action against the defendant[ ]." The court dismissed plaintiffs' motion for summary judgment as moot.

¶ 28    This appeal followed.

¶ 29                                    II. ANALYSIS
¶ 30                                 A. Standard of Review
¶ 31    Under section 2-1005(c) of the Code of Civil Procedure, a party is entitled to summary judgment as a matter of law when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." 735 ILCS 5/2-1005(c) (West 2012). "In ruling on a summary judgment motion, the trial court must construe the pleadings, depositions, and affidavits strictly against the movant and in favor of the opposing party." *Woods v. Pence*, 303 Ill. App. 3d 573, 575, 708 N.E.2d 563, 564 (1999). "Summary judgment is a drastic measure of disposing of litigation and it should only be granted when the movant's right to relief is clear and free from doubt." *Id.* at 575-76, 708 N.E.2d at 564.

¶ 32    "The purpose of a summary judgment proceeding is not to try issues of fact but is to determine whether any triable issues exist." *Id.* at 577, 708 N.E.2d at 565-66. "A triable issue exists where there is a dispute concerning material facts or where those facts are undisputed but reasonable persons might draw different inferences from those facts." *Id.* at 577, 708 N.E.2d at 566. The *de novo* standard of review applies to an order granting summary judgment. *Id.* at 576, 708 N.E.2d at 564.

¶ 33                                       B. Waiver
¶ 34    Defendant argues by accepting an incomplete disclosure form, plaintiffs waived any right to recovery based on the incomplete items. Plaintiffs argue the seller's obligations under the Act cannot be waived, and we agree.

¶ 35    In *Curtis Investment Firm, Ltd. Partnership v. Schuch*, 321 Ill. App. 3d 197, 200, 746 N.E.2d 1233, 1236 (2001), the Third District held, "a buyer's right to receive a disclosure statement prior to closing cannot be waived." In *Curtis*, the sellers who failed to provide a disclosure form were liable for failing to disclose a defective water supply system, even though the buyer continued with the sale without the form. *Id.* at 200-01, 746 N.E.2d at 1237. The court noted, under section 20 of the Act:

> " 'A seller of residential real property *shall* complete all applicable items in the disclosure document described in Section 35 of this Act. The seller *shall* deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.' " (Emphases added.) *Id.* at 199, 746 N.E.2d at 1236 (quoting 765 ILCS 77/20 (West 1998)).

The court concluded the word " 'shall' " required "a mandatory reading of the provision," noting the statute did not list any exceptions. *Curtis*, 321 Ill. App. 3d at 200, 746 N.E.2d at 1236.

¶ 36    Like the buyers in *Curtis*, plaintiffs did not waive their claim under the Act by continuing with the sale. While defendant supplied an incomplete disclosure form, omitting answers to question Nos. 17 through 22 rather than failing to submit any disclosure form, the court's reasoning in *Curtis* applies. Section 20 of the Act states the seller "shall complete all applicable items in the disclosure document described in Section 35 of this Act." 765 ILCS 77/20 (West 1998). This mandatory language requires the seller to complete the entire form.

¶ 37    Further, "[t]he primary purpose of the statute is to provide a remedy for aggrieved buyers of residential real property." *Curtis*, 321 Ill. App. 3d at 201, 746 N.E.2d at 1236. Consequently, "[t]o allow a seller to ignore his obligation under the Act and avoid reporting a material defect, thereby defeating a buyer's subsequent claim, would only encourage the evils the legislature sought to remedy." *Id.* at 200-01, 746 N.E.2d at 1236-37. Plaintiffs' claim is not defeated because they continued with the closing, as such an outcome would allow defendant to fail to perform his duty to complete the entire disclosure form with impunity.

¶ 38    Defendant argues the dissent in *Curtis* presents the more appropriate reasoning because "the incomplete items are not the basis for any factual defect that allegedly existed in the residence transferred between the parties." As best we can discern, defendant argues plaintiffs have not shown settling exists as a material defect in the property. We disagree. Plaintiffs have shown settling of the foundation caused damage to the property. Both plaintiffs testified about the damages caused by the cracking in the wall and basement. Robert testified a contracting company, HelioTech, had investigated the damages and determined they would be expensive to repair. Defendant himself was concerned enough about the damage caused to file an insurance claim regarding the cracks.

¶ 39    We are not persuaded by the dissent in *Curtis*. The dissenting justice explained he would have found "the buyers waived the right to recovery under the Act" because the buyers had the right to terminate the contract yet proceeded with the transaction. *Id.* at 202, 746 N.E.2d at 1238 (Holdridge, J., dissenting). As the majority pointed out in *Curtis*, terminating the contract is not the buyer's only right or remedy, as section 55 also "allows the buyer to sue the seller to recover actual damages and costs–the remedy sought by [plaintiff]." *Id.* at 200 n.1, 746 N.E.2d at 1236 n.1. Plaintiffs in this case also seek damages and costs. We follow the majority in *Curtis* and conclude plaintiffs have not waived the right to receive damages based on the incomplete disclosure form.

¶ 40                    C. Defendant's Liability Under the Act

¶ 41    Under section 55 of the Act, a "person who knowingly violates or fails to perform any duty prescribed by any provision of this Act *** shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party." 765 ILCS 77/55 (West 1998). Under section 25(b), the seller "shall disclose material defects of which the seller has actual knowledge." 765 ILCS 77/25(b) (West 1998). A seller is not required "to make any specific investigation or inquiry" to complete the disclosure form. 765 ILCS 77/25(c) (West 1998).

¶ 42    Plaintiffs argue the trial court erred in granting summary judgment in favor of defendant. First, plaintiffs allege the record evidence demonstrates a material issue of fact as to whether defendant knew about and failed to disclose defects in the home's plumbing system. Second, plaintiffs argue they are entitled to summary judgment as there is no material issue of fact as to

whether defendant knowingly failed to disclose defects in the home's foundation caused by settling. We address each argument in turn.

¶ 43                                          1. *Plumbing System Defects*

¶ 44          Plaintiffs argue they presented evidence creating an issue of fact as to whether defendant knowingly failed to disclose defects in the plumbing system. Defendant denies he had knowledge of any material defect in the plumbing system.

¶ 45          Generally, a defendant's knowledge of a defect at the time of the closing is a question of fact to be determined by the trial court. *Curtis*, 321 Ill. App. 3d at 201, 746 N.E.2d at 1237. Further, "[a] trier of fact need not accept a party's testimony that he had no knowledge of a particular fact in question if the evidence shows to the contrary." *Id.* In *Curtis*, the Third District upheld the trial court's finding a defendant, who denied any knowledge of defects in the water supply line to the home, had knowledge of the defect because he had the water turned off at the curb box, rather than the meter inside the home. *Id.* Here, while defendant denied any knowledge of defects in the plumbing system in his affidavit, defendant's denial is not definitive. As *Curtis* demonstrates, the case may still present an issue of fact if plaintiffs can present evidence to the contrary. See *id.*

¶ 46          In *Woods*, the Third District held the case presented material issues of fact as to defendant's knowledge of a leak in a home's roof where, prior to the sale, defendant had the roof repaired between three and five times in a four-year period. *Woods*, 303 Ill. App. 3d at 576-77, 708 N.E.2d at 565-66. The court in *Woods* overturned the trial court's grant of summary judgment in favor of defendant because the evidence of the prior fixes "raise[d] at least an inference of a chronic condition that had never been permanently eliminated." *Id.* at 576, 708 N.E.2d at 565.

¶ 47          In this case, plaintiffs have presented evidence raising a question of fact as to defendant's knowledge at closing of a material defect in the plumbing system. At her deposition, Rhonda testified that within a few days of moving into the home her children attempted to use the shower and noticed water leaking from the junction of an interior wall and the floor located behind the shower. Rhonda contacted defendant about the leak and he told her to "take off the ceiling tile off the top of the shower and get an extension on a wrench to go in and tighten the pipe up." Rhonda clarified he was describing the pipe inside the wall leading to the showerhead. Just as the defendant's repeated prior attempts to fix his roof created an inference of a chronic condition in *Woods*, defendant's statement raises at least an inference defendant had specific knowledge of the leak at closing.

¶ 48          Defendant argues "the need to tighten the showerhead *** hardly could be classified as a material defect." We disagree. Whether a shower leaking into an interior wall constitutes a material defect is an issue of fact. Plaintiffs have presented evidence this leak is material. Both plaintiffs testified the leak allowed water to enter into an interior wall. Richard testified a plumber investigated the leak and concluded the only way to fix it was to remove and reinstall the pipes going to the bathroom, and stated such repairs would be expensive. Based on this evidence, a trier of fact could find this defect material.

¶ 49          Plaintiffs also argue defendant had knowledge of faulty pipes ventilating the heating and air conditioning systems. Rhonda testified defendant described to her how to fix a foul odor in

the basement by replacing hoses coming from the heating and air conditioning systems. Defendant argues the complaint limited its allegations to defects in the plumbing system and unstable foundation and walls, and a faulty ventilation system does not constitute a factual description of a material defect in the plumbing system. Richard testified a contractor determined the smell was due to defective plumbing of a drain line in the basement. We conclude the existence of this alleged defect and whether it constitutes a material defect in the plumbing system are questions of fact.

¶ 50                                    2. *Foundation Defects*

¶ 51        As to the foundation defects, both parties have moved for summary judgment. "By filing cross-motions for summary judgment, the parties agree that no factual issues exist and this case turns solely on legal issues ***." *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 73, 969 N.E.2d 359. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28, 978 N.E.2d 1000. We conclude an issue of fact exists as to this issue.

¶ 52        Plaintiffs argue by not answering question No. 17, defendant failed to comply with his duty under the Act as he had actual knowledge settling affected the home. See 765 ILCS 77/25(b) (West 1998). In defendant's affidavit, he admitted he noticed cracks in the foundation, made an insurance claim concerning those cracks, and in 1991 he received the letter from State Farm informing him the damages were caused by settling. This constitutes evidence that at the 1998 closing defendant had actual knowledge settling was occurring on the property. Plaintiffs also testified some cracks were covered by shelving and a plaster-like material. This evidence permits the inference defendant either covered the cracks or had someone cover the cracks, as defendant and his late wife were the only other people to ever own or live in the home.

¶ 53        Defendant argues his affirmative answer to question No. 4, indicating he was aware of material defects in the basement or foundation, satisfied his duty to disclose defects related to cracks in the basement. We disagree. A seller who discloses some information can be subject to liability under the Act if the seller knows the information disclosed contains a material error, inaccuracy, or omission. *Hogan v. Adams*, 333 Ill. App. 3d 141, 147, 775 N.E.2d 217, 222 (2002) (citing 765 ILCS 77/25(a)(i), 55 (West 1998)). In *Hogan*, the sellers disclosed only one flooding incident (occurring when the sump pump was not working due to power failure) when it was uncontested the sellers knew the basement had flooded on at least one other occasion when the sump pump was working. *Hogan*, 333 Ill. App. 3d at 148-49, 775 N.E.2d at 223. This court concluded defendants knew the information disclosed was incomplete and was "particularly misleading because it suggests flooding would only occur if the sump pump was not properly functioning." *Id.* at 149, 775 N.E.2d at 223.

¶ 54        Here, the trier of fact could find defendant's explanation, "no damage from water in basement from crack," equally incomplete and misleading. The word "crack" used in the disclosure form is singular, indicating there was only one crack, while defendant acknowledged in his affidavit he made an insurance claim based on "cracks" occurring in the foundation. This distinction is significant because one crack might indicate an isolated incident, while the existence of more might put a plaintiff on notice of a more serious defect. Defendant's description is even more misleading in light of facts presented suggesting many of

the cracks in the basement wall were covered by shelving and a plaster-like material, as plaintiffs could not have observed the full extent of the cracking. Defendant's description could be incomplete because it does not state the cause of the cracks although defendant admitted he was informed they were caused by settling.

¶ 55 Further, defendant's answer to question No. 4 does not excuse his failure to answer question No. 17, because the clear language of the Act requires a seller to answer both questions if both apply (see 765 ILCS 77/20 (West 1998)). Defendant does not avoid liability for failing to disclose a defect specifically listed in question No. 17 because he indicated knowledge of one crack in another more general question. Such an outcome would reward sellers for picking and choosing which statements on the form they will answer.

¶ 56 Defendant also argues, without citation to any authority, plaintiffs must show a "causal connection" between the damages they allegedly suffered and defendant's leaving question No. 17 blank to establish liability under the Act. Plaintiffs are not required to show causation to establish liability, as the plain language of the Act subjects sellers who fail to comply with a duty under the Act to mandatory liability. *Curtis*, 321 Ill. App. 3d at 200, 746 N.E.2d at 1236. While causation of damages may be relevant to the amount of damages (see 765 ILCS 77/55 (West 1998) (successful plaintiffs and entitled to "actual damages" and court costs)), the trial court did not reach the issue of damages and it does not affect the outcome of this appeal.

¶ 57 Last, defendant argues no evidence suggests settling affects the premises because at the deposition, when asked what evidence he had related to the unstable condition of the foundation and the walls, Richard responded, " 'I am not sure of any.' " This argument takes Richard's statement out of context, as he was responding to the question " 'what *other* evidence do you have [defendant] did not disclose proper information on paragraph [No.] 17 *other than* what is in [the letter from State Farm]?' " (Emphases added.) A negative response to this question simply does not amount to "an admission [plaintiff] was not sure of any evidence of defects of the foundation and wall," as defendant argues. In their depositions, plaintiffs described the damage caused by cracks and Richard stated contractors from HelioTech have evaluated the damages and provided estimates as to the costs of repairs.

¶ 58 We conclude an issue of fact exists as to defendant's knowledge of the foundation defects at the time of the closing.

¶ 59                                III. CONCLUSION
¶ 60 For the reasons stated, we reverse the trial court's judgment.

¶ 61 Reversed.